## NORTHERN MINNESOTA DRAINAGE COMPANY v. EQUITABLE SURETY COMPANY.[1]

December 3, 1915.

Nos. 19,443—(105).

**Bond — building contract — surety not liable for work of assignee.**

> If a third party takes over a construction contract from the original contractor, the surety of such contractor is not liable for the work done by such third party; and in this case the evidence was sufficient to sustain a finding that the plaintiff corporation, organized by the original

[1]Reported in 154 N. W. 1092.

contractor and two others, each holding an equal amount of stock, took over the contract of the original contractor; and that the court erred in not submitting such issue to the jury.

Action in the district court for Pennington county against defendant Mageau and Equitable Surety Company to recover $7,188.70 upon a statutory bond to secure the construction of Judicial Ditch No. 2 in the Fourteenth judicial district. The case was tried before Grindeland, J., who when plaintiff rested and at the close of the trial denied the motion of defendant surety company to dismiss the action, and a jury which returned a verdict for $5,793.51 against defendant company. From an order denying its motion for a new trial, defendant company appealed. Reversed.

*Kerr, Fowler, Schmitt & Furber,* for appellant.
*McElwee & Payte,* for respondent.

DIBELL, C.

Action by plaintiff to recover of the defendant Mageau and the defendant Equitable Surety Company on a bond issued by them upon the construction of a judicial ditch. There was a verdict for the plaintiff against the defendant Equitable Surety Company. Mageau was not served and did not appear. The surety company appeals from the order denying its motion for a new trial.

On December 29, 1911, defendant Mageau entered into a contract with the counties of Red Lake and Pennington to construct Judicial Ditch No. 2. On January 15, 1912, he and the defendant surety company executed a bond to the two counties in the sum of $11,500, conditioned as required by statute, to secure the construction of this ditch and those who performed labor, etc., upon it. The plaintiff sued upon the bond to recover for the work done by it for Mageau.

As the case went to the jury it was left to it to find the reasonable value of the work done by the plaintiff upon the ditch, and the amount which it had been paid. The surety company sought by appropriate instructions to have the question of its liability submitted to the jury. This was denied it.

The plaintiff corporation was organized by Mageau, Griffith and one Sutcliff about June 26, 1912. About July 27 following, at the first

meeting of the stockholders, a resolution was adopted which we assume to be in the following form:

"That this corporation issue to Salem Mageau, Charles Sutcliff and Elmer E. Griffith three hundred sixty (360) shares of capital stock of said corporation in consideration for a bill of sale to the following described property, to-wit: Two floating dredges now in Pennington county on county ditches Nos. 53 and 55 in said county; one walking dredge at Plummer; the horses, wagons, graders, tools and ditching equipment now used by said Sutcliff, Griffith and Mageau in their present ditching operations; an assignment by them of all unfinished contracts for the construction of ditches and of moneys earned but not due which are stated to be in the sum of three thousand ($3,000.00) dollars, and for the transfer of the sum of cash in bank now held by said three men and amounting to the sum of one thousand ($1,000.00) dollars, it being the intention of these incorporators to transfer to this corporation all of the personal property now belonging to the firms of Sutcliff and Griffith and Mageau and Griffith; the said stock of said corporation to be issued one hundred twenty (120) shares each to said three men, viz: Salem Mageau, Charles Sutcliff and Elmer E. Griffith."

Griffith and Sutcliff in their testimony make a hesitating, partial denial that a resolution such as is quoted was adopted. It does not seem that there can be substantial controversy over it. The original resolution which should have been in the minutes is not produced but the stenographer who took the proceedings furnished the resolution as it is quoted.

There is a suggestion in the brief of respondent that Mageau's contract with the two counties was not assignable. Whether technically so as between Mageau and the counties is not important. If the corporation took over the construction of the contract it cannot recover of the surety company the value of work done upon it.

The only question presented to us is whether there is evidence justifying a finding that the corporation took over Mageau's contract. We find that the evidence is ample; indeed, it is convincing. The fact that this resolution was adopted, apparently including Judicial Ditch No. 2, that the plaintiff company sought to keep the resolution, of which it was always in fear, from the knowledge of the surety company, and with

the trial approaching sought to prevent evidence of it coming to light, is enough. There are other circumstances in evidence which very strongly support the theory that the corporation took over the contract; and they are inconsistent with the claim that it did not. We have not failed to note that Sutcliff and Griffith claim that at a definitely fixed time Mageau promised to give them the contract price for completing the ditch. Mageau denies this. The corporation did not complete it. The work was finally finished by the surety company. The affairs of the corporation are much involved. Upon facts such as appear in the record before us we do not see how a verdict for the plaintiff can be returned.

The senior counsel for the plaintiff was guilty of serious misconduct in his remarks to the jury. The trial court did all that a trial court could do to make them innocuous. Since a new trial is granted upon a matter going to the merits we take no time in discussing them. We have not failed to notice them.

Order reversed.            ——————————