SIBLEY LUMBER COMPANY, Appellee, v. A. W. MADSEN et al., Appellees; UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.

**PRINCIPAL AND SURETY:** Liability of Surety—Assignee of Contract. Sureties on a bond to pay for all labor and material furnished by a highway improvement contractor are not liable to an *assignee* of the contract for the amount of payments paid to the assignor because of the neglect of the assignee to notify the public authorities of the assignment. This for the reason that (1) the assignee simply stood in the shoes of the assignor, and (2) the bond contemplated no such liability.

*Appeal from Osceola District Court.*—WILLIAM HUTCHINSON, Judge.

OCTOBER 24, 1924.

ACTION upon a surety bond. Judgment in favor of plaintiff, as prayed. The facts are fully stated in the opinion.— *Reversed.*

*B. F. Butler* and *Miller, Kelly, Shuttleworth & McManus,* for appellant.

*Clark, Dwinell & Meltzer,* for appellee.

STEVENS, J.—Appellee, the Sibley Lumber Company, a corporation of Sibley, Iowa, brings this action to recover of A. W. Madsen the sum of $2,512.90, as a balance due for lumber, posts, and material which it is alleged were sold and delivered to him at his instance and request, for use in carrying out a contract which he had with Osceola County for a highway improvement,

and for labor performed. The other defendant, who is the appellant herein, is the United States Fidelity & Guaranty Company, the surety on the bond given to the county by Madsen for the faithful performance of the contract to furnish the material, all tools with which to do the work, and all labor in the construction of guard rails on a highway between Sibley and Ocheyedan, Iowa, under which the material was furnished and the labor performed. The terms of the contract which Madsen had with the county required him to furnish the material and labor to erect the guard rails, as above stated, at 40½ cents per lineal foot, or at a total cost of $3,731.67. The contract bears date October 12, 1921, and was approved by the Iowa state highway commission on October 6th. The bond, which is conditioned for the faithful performance of the contract, guarantees the payment of all claims for material and labor and damages to the county. Before entering into the contract, Madsen had an oral agreement with the lumber company to furnish him the necessary material at a stipulated price, which left a balance under the contract of $1,459.65 for labor. Before any material was delivered or labor performed, Madsen assigned the contract to the lumber company for a consideration of $350. The written assignment is as follows:

"Nov. 8th, 1921. In consideration of the sum of $350.00 (three hundred fifty dollars) in hand paid to A. W. Madsen, I hereby assign my contract to the Sibley Lumber Company for building 9,400 ft. of guard rail between Sibley and Ocheyedan in accordance with plans and specifications of the Iowa state highway commission. If contract is changed by highway commission adding more guard rail or deducting from number of feet the consideration will be pro rata of the above sum of $350. A. W. Madsen. Witnesses: A. F. Dormeyer, John Brandsma."

All of the labor was performed by, or under the direction of, one John Brandsma. On February 1st, after the work was completed, the lumber company filed its claim "against Osceola County, Iowa," with the county auditor, for the balance due for material and labor, which, after allowing a credit of $1,000 on material, amounted to $2,807 for material and $1,459.65 for labor. On the same day, John Brandsma filed a claim for labor

in the sum of $1,459.65, on which a payment of $200 was credited, leaving a balance due of $1,259.65. There is no controversy in this action between the county and any of the parties named except the lumber company and appellant. It appears from the argument of counsel for appellee that the full contract price for both labor and material has been paid by the highway commission, either to Madsen or to the county. The lumber company gave no notice to the board of supervisors or to the highway commission of the assignment of the contract to it, nor did it file the same in the office of the county auditor. The contract provided that the engineer might file estimates covering the material delivered and labor actually performed, and that the commission would pay 90 per cent on the material and 75 per cent on the labor. During the progress of the work, Madsen filed an estimate for material and labor, and received $2,025, $1,000 of which he paid to the lumber company, and $200 to Brandsma, retaining the balance, of $825.

Appellant sets up the written assignment of the contract to the lumber company as a defense, contending that its effect was to place the assignee in the same position as its assignor, and that, as its assignor could not have recovered against the surety company for his own defalcation, the same rule must be applied to his assignee. A reference to the record at this point is necessary to a clear understanding of the controversy.

It appears without dispute in the record that Madsen, having obtained another contract, was unable to erect the guard rails, and that appellee negotiated with Brandsma to secure the contract, or this part of the contract; that the negotiation resulted in the execution to appellee of the assignment quoted above, for a consideration of $350, which was advanced to him by the lumber company for Brandsma. Appellee's version of the assignment is that Brandsma had no money, but was willing to pay Madsen $350 for the privilege of performing the labor, and that the contract was orally assigned to him; that the only purpose for which the writing was executed in the form shown was to secure appellee for the advancement made to Madsen for Brandsma. The business on behalf of appellee was all con-

ducted by one Dormeyer, who was its principal witness upon the trial. Concerning the transaction, this witness testified:

"The contract was signed on the 12th day of October, 1921, and I immediately wired to have the posts and the lumber shipped. Shortly thereafter, Mr. Madsen advised me that he didn't see how he could complete the job, as he had a grading job south of Ocheyedan, and the board of supervisors were crowding him to have him complete that job before cold weather set in. He asked me if I couldn't find someone who could take the contract off his hands. He estimated that he ought to have $500 for the contract; he figured he should make $500 if he did the work himself. I secured a party by the name of John Brandsma, who was willing to pay him $350 for an assignment of his contract. That was satisfactory to both Brandsma and Madsen, but Mr. Madsen demanded to have $350 cash. That amount was agreed upon. Brandsma didn't have the cash, and I in turn advanced this cash for Brandsma, and bought the contract myself, and had the contract assigned to the Sibley Lumber Company. The assignment of the contract set out in the separate answer of defendant A. W. Madsen, on page 2 thereof, Paragraph 4, is a correct copy thereof. The assignment was taken in the name of the Sibley Lumber Company, for the purpose of protecting the company for the $350 advanced on behalf of Brandsma, and any other payments that might be made. I advised Mr. Brandsma what the material on the contract would cost, and showed Mr. Brandsma a copy of the material list that was then in the name of A. W. Madsen. The difference between the contract price and the cost of the materials was $1,459.65. Mr. Brandsma was to receive $1,459.65, less the $350 advanced by us. * * * Mr. Brandsma and I filed identical bills for labor. The mutual understanding was that Mr. Madsen assigned his entire contract to Mr. Brandsma. The actual contract was assigned to the Sibley Lumber Company, so that the Sibley Lumber Company could draw the payments on the contract. The intention was to assign the contract to Brandsma, and he was to buy the material and take over Madsen's material contract. The contract was taken in the name of the Sibley Lumber Company merely to secure the company

in the payment of their material. * * * The intention of the
assignment was to protect the payments for material and $350
advanced to Brandsma. Mr. Brandsma was to do the work
and buy the materials of me, or take over the materials same
that I had made to Mr. Madsen, under exactly the same condi-
tions I had made him. My representatives have paid Mr.
Brandsma for all his interest in the assignment. I took the
assignment as a friendly turn to Mr. Brandsma. * * * After
the assignment, we considered we were selling the lumber of
Brandsma, and expected to recover from Brandsma. (Defend-
ant's Exhibit 2 read in evidence.) I told Mr. Gill that we
claimed everything in this contract, and that Madsen was en-
tirely out of it; I thought our assignment was legal, but Mr.
Madsen didn't fulfill it. We looked to Mr. Brandsma for the
payment of the lumber bill.''

Recalled, the witness testified:

''I did not look to Brandsma for the payment of my lumber
bill. The assignment was made payable to the Sibley Lumber
Company for Madsen. Madsen was the only man that paid me.
I was mistaken when I said that I looked to Brandsma for
payment.''

After Dormeyer learned of the payment of $2,025 to Mad-
sen, he demanded that the full amount be turned over to appellee,
for the reason that Madsen had completely severed his connection
with the contract, and had no right to receive the money. On
this point, Dormeyer testified as follows:

''Immediately after I found out, through the highway com-
mission, that the payment had been made, I demanded the full
amount of the $2,025 from Mr. Madsen, and demanded that the
full amount be paid to the Sibley Lumber Company, according
to the assignment. I advised him that the money was mine,
according to the assignment to us, and that he had no interest
in the contract whatsoever, and that he had been paid $350 for
his interest in the original contract.''

Referring to the assignment, Brandsma in part testified as
follows:

''I got the entire contract from Madsen assigned to me. I
took over the entire contract. Dormeyer and I did not take the

contract over together. I bought the lumber for $2,300. I was dealing with Mr. Dormeyer after the assignment; Madsen had nothing to do with it after that date. I took Dormeyer's figures and determined from them what I was to receive for the labor. After taking off the amount of the material bill, there remained $1,400 for the labor.''

Madsen testified that, while the assignment in form was to appellee, it was the intention of all parties to assign the contract for labor to Brandsma. So far as Madsen is concerned, the only possible inference to be drawn from the testimony is that, by his assignment of the contract to appellee for a consideration of $350, he parted with all the interest he had therein; and this, as appears from the foregoing excerpts from the testimony of Dormeyer, was his interpretation and understanding of the transaction. While Madsen had, no doubt, agreed to purchase from appellee the material to be used in the construction of the guard rails, this agreement was terminated by the assignment. Madsen had no further use for the material which he had agreed to purchase of appellee. Dormeyer first testified that the materials were sold to Brandsma, and that he looked to him for payment. This testimony he changed, when recalled, testifying that he looked to Madsen for payment. The latter claim is entirely inconsistent with his previous testimony, in which he said that he complained to Madsen because the latter had collected $2,025 on the estimate, for the reason that he had parted with all his rights under the contract. If appellee had sold the material to Madsen, he would, of course, have had a right to receive the money from the highway commission. It is too clear for argument, however, that no material was furnished Madsen, and that appellee at no time after the contract was assigned to it looked to him for payment. The record is barren of any evidence which shows that the material was purchased by Brandsma. Brandsma simply performed the labor, and nothing more. The only rational conclusion to be drawn from the testimony is that the assignment to appellee was in good faith; and that, in so far as it provided security for the $350 advanced for Brandsma, it was a mere incident of the transaction; and that the material for the guard rails was furnished by appellee, as

assignee of the contract, who expected to receive payment thereof from the highway commission and the county. Later, and on August 25, 1922, John Brandsma assigned his account for labor, less a credit of $217, to the lumber company. The reason given by Dormeyer for this assignment was that Brandsma advised him that he was unable to complete the contract without payment, and that he would starve to death unless someone paid him for his labor, and that Dormeyer assured him personally that he would get his pay in full; that he guaranteed he would receive it. Another witness, by the name of Hansen, who was interested in the lumber company, testified that Brandsma entered suit against it, and that, as he did not like to have the company sued, he took it upon himself to pay the claim and have it assigned to the company.

Since Madsen had previously transferred to appellee all his interest in his rights to or under his contract, the filing of the estimate and the receipt by him of the payment made thereon, as between himself and his assignee, were unauthorized and wrongful. The failure of appellee to give notice to the highway commission and the board of supervisors of the assignment is not clearly explained. Apparently, Dormeyer either thought it was unnecessary, or did not anticipate that Madsen might undertake to collect money due on the contract. There is nothing in the record from which the inference may be drawn that it was the understanding of the parties that the contract was to be carried out in the name of Madsen, nor is it claimed by appellee that such was the arrangement. It seems to us that judgment should not have been entered against the surety for at least two reasons: one, that appellee, as assignee of the principal on the bond, was in no better position to recover thereon than Madsen would have been for his own default (*Northern Minnesota Drainage Co. v. Equitable Sur. Co.*, 131 Minn. 243 [154 N. W. 1092]); and, another, that the default alleged on the part of Madsen is in no way covered by the covenants of the bond, and, but for the failure of appellee to give notice of the assignment to the highway commission or the board of supervisors, it is certain that no payment would have been made to Madsen. By retaining $825 of the amount paid to him, in dis-

regard of his assignment of the contract to appellee, he must be held to have wrongfully converted it to his own use. The bond sought only to indemnify the county against damage or loss, and to insure the payment of all claims for material furnished or labor performed under the contract. It does not, in terms or in spirit, cover the defalcation shown. Brandsma clearly performed no labor for Madsen, to whom appellee neither sold nor delivered any part of the material for which recovery is sought. On this point, the record is conclusive. That Madsen was liable to appellee for the amount converted by him to his own use is, of course, clear. The judgment entered in the court below was against him and appellant for the full amount claimed. Madsen has not appealed, but we gather from statements contained in the argument of counsel that the balance due under the contract has been paid to appellee. In any event, the judgment was made a lien thereon.

Further discussion is unnecessary. It follows that the judgment entered against appellant must be reversed, but will stand in all other particulars.—*Reversed.*

ARTHUR, C. J., and DE GRAFF and VERMILION, JJ., concur.